2013-1150 Mr. Rosenkranz, please proceed. Good afternoon, Your Honors. May it please the Court, Josh Rosenkranz representing Apple. Your Honors, there are a lot of claims in this case and in the interest of simplicity because all of the claims really revolve around the contract. I'd like to start with the contract and contract remedies and then circle back. That's point two. And then circle back to point one, which is the antitrust issue. Does that mean I should construe you as not any longer maintaining your claim of a lack of jurisdiction? Or was that not you? That was them, Your Honor. Oh, I see. This Court does have jurisdiction, and we're very firm in that view. Your Honors, the key to understanding I'm sorry. I'm stuck on that. Can we talk a little bit about jurisdiction? Yes. There's cases like Nielsen and Chamberlain that suggest dismissals without prejudice are like constructive amendments to the well-pleaded complaint. And if we were to apply that principle to your complaint, then the patent misuse claim disappears, and then all that's left are non-patent claims, and then we might have to transfer. Well, so Your Honor, Moterell is not arguing that, which I know is not binding in this Court. It was in the motion papers, right? Yes, but not in their briefing before the Court. But there's a reason for that. But they made a motion that was delayed to the merits panel, which means Yeah, understood. Let me address the question on the merits. That is true, Your Honor, in a context in which the claim that was dismissed is not being appealed. But here, the claim that was dismissed is being appealed. It would make no sense. Let's say the only issue in the case were patent misuse, and it got dismissed without prejudice. We would have the right to bring up that claim on appeal. We are bringing up that claim on appeal. It would make no sense to say that the mere dismissal when we're appealing it deprives the Court of jurisdiction. Right, but I'm just trying to understand, then, what is the principle we're supposed to take away from Nielsen and Chamberlain, which seem to suggest that, well, it's not even clear that it's important whether or not the actual patent claim that was dismissed without prejudice gets appealed. And although that's a factual distinction, the principles seem to be more about, let's look at the complaint, the well-pleaded complaint, and now we have to do a constructive amendment to that well-pleaded complaint. Right. Your Honor, the reason Nielsen didn't consider this situation is because that wasn't the situation in that case. But it matters a lot. The Court can't lose jurisdiction to decide an appeal of a patent issue just because the patent issue has been dismissed when the appeal actually involves the patent issue. But now we're shifting in time to trying to look at the appeal stage, whether or not the patent claim actually got appealed, when aren't we supposed to look back in time to the complaint time frame? And then, I guess, according to Chamberlain and Nielsen, sort of imagine a fiction, basically, that the patent claim was never there. Well, Your Honor, yes, you always start at the time the case began, and patent misuse was in at the time the case began. The only way to understand cases like Nielsen is to say, OK, let's go back and revise the claim. But that couldn't possibly be what you do, that is, go back and revise the complaint. But that couldn't possibly be what you do when the complaint actually, that very claim in the complaint is being appealed to the Court. My bottom line is the Court always looks at the complaint. That's what Congress says the Court should do. So Nielsen has to be read as a narrow exception to that rule in a context in which the plaintiff has essentially moved a piece of the case over somewhere else, which we quite plainly have here. And then one last question is, those cases also seem to have some kind of functional consideration as to whether or not your legal rights have been altered by the dismissal. And it's unclear to me what would be the alteration of your legal rights here by the dismissal without prejudice. What would you say is that altered legal rights? Well, we had a live case. We had a case based upon a particular set of facts. The Court was saying that it's dismissing that case. We have the right to appeal that on the facts as we presented them to the Court. But have your legal rights been somehow compromised or burdened? Well, yes, Your Honor. In the same way that the dismissal of any claim in a complaint, when we believe the claim should have survived, compromises our rights. Let me put it this way. If we presented the same facts to another fact finder, we would be bound by the same result. Our position is we shouldn't be bound by that result. Why would you be bound by that result? She expressly indicated she is exercising her discretion to dismiss the claim. I find it difficult to believe some other judge would feel like that impedes their discretion. On the same exact facts, if we had gone through the same evidence and reached the same conclusion, I would think another judge would feel bound. If nothing else changed, another judge would feel bound to abide by it. The reason that judge—I mean, we're positing a situation in which nothing at all has changed and we present the same exact claim without reserving the rights that we reserved. So if I may, I know we're eating deep into my time, but let me speak about the merits. The key to resolving the specific performance issue is to focus on the contractual promise we are trying to enforce. Motorola made— Where is the antitrust injury? Tell me that. Well, I was speaking about specific performance. But if you'd like, I'll turn to antitrust injury just briefly. The clearest and most— You want to touch briefly on everything we want to ask you about. Read the panel. I'll go for as long as you want. Our main argument on antitrust is that we do not have to show that there was an injury already suffered. It is enough to show threatened harm. We don't even have to allege that we've already suffered harm. It's clear on the face of the statute. Section 16 says it twice. It grants relief against, quote, threatened loss or damage by a violation of the antitrust laws. The plaintiff can target, quote, threatened conduct that will cause loss or damage. And the threat is the threat that we will exceed to a non-grant rate. And Mr. Rosenkranz, I took your case to be about two theories of antitrust violation. One was you were seeking damages due to actual injuries you suffered. And then, two, you were looking for an injunction due to this significant threat that you're under. So are we now no longer really thinking about that first one, and now we're really just talking about the second one? Well, Your Honor, the driver in this case all along was the injunction. And that's what Apple was most focused on. What is the threat then? The threat is the threat of exceeding to a non-grant rate. If we believe that the court will find that the grant rate is, say, 90 cents, the threat that we will agree to $3 or $5 or anything up to $12.35 is a huge antitrust threat. It's a huge threat to our business if we do, in fact, exceed to it. If that's true, then every single FRAND participant would have a right to come to court and demand that the court establish the rate up front. Otherwise, every one of them would have an antitrust injury claim by virtue of being able to say, I might agree to a FRAND rate that exceeds what you court would find is a reasonable FRAND rate. Sure, Your Honor. Any standards implementer can come to a court and say the other side has been utterly unreasonable. They've offered us, as Motorola did, 12 times the going rate. That's unreasonable. We would ask the court to set a FRAND rate. But there are all sorts of reasons why the general participant would not do that. There's huge risk in them or in us going to a court and asking for the court to set the rate rather than working it out. It could be much higher. We could bring on ourselves, as we, in fact, did. What's the risk to you? You came into this litigation with the posture that I want you to set the rate, but I'm not going to agree to the rate. You want to have your cake and eat it, too. So what is the harm to you since you're not agreeing to accept that rate if we set it? Well, so first I was answering the question about everyone else. But the harm to us is that if we are right that the correct rate is somewhere around $1 or $0.90, then the enormous threat to us is that because of the pressures put upon us by this exorbitant demand, we will end up exceeding to a rate that's quite a bit higher. Because there are, I mean, the difference between our positions and Motorola's is $11. You multiply that by a half a billion phones, just phones alone, you're talking about billions of dollars hanging over the head of an apple. If the rate that we accept is double the friend rate, that's an enormous antitrust harm, even if we end up exceeding to it. But why can't we just look at this as two parties not agreeing as to what's the appropriate value of patented technology? And that's it. And so every time that someone thinks that the patent owner is asking for an unreasonably high rate, we don't invoke antitrust laws, do we? Well, so we're shifting back and forth between the contract and antitrust. Okay. So on the contract, in the first instance, sure, we would have a contractual remedy if anyone would have a contractual remedy if for three years the patent owner demanded a rate that we believe or the implementer believes to be 12 times the correct rate. We might end up in that patent, the standards implementer might end up being wrong. But if he's right, someone's got to be in the position to provide the remedy to him. And why is it, in your view, that you don't have to be bound by that rate that's set by the court? Your Honor, we would be bound by the rate, which is to say we would never be allowed to take the position ever again in any forum that that rate is unfair. So am I misunderstanding Judge Crabb's decision below on what she did when she dismissed your breach of contract? The question is whether we have to accept the offer sight unseen. And there's a big difference. Ex ante, before Motorola breached the contract, if Motorola had made an offer to us, let's say $12 or even $2, we would have had the opportunity to think about the offer, to examine it against alternatives, and then to make a reasoned decision as to whether we would accept that offer. All we're asking for is an order that puts us in the same position we would have been if Motorola hadn't breached. Think of it this way, and we lay out this hypothetical in our brief. If Motorola had made a contractual commitment to us to sell us its headquarters as a right of first refusal and then made a secret offer to someone else without telling us what it is, we will be allowed to enforce our right to receive the offer first. No court would ever make us accept the offer sight unseen. All we're asking for is the opportunity to do exactly what the contract required Motorola to do and put us in the position to be able to do. The tricky part is that this Fran contract, assuming it's a contract, has this indefinite, ambiguous term, the actual royalty rate. It just says make sure it's a fair rate, but it doesn't actually give us or anybody a hard number. I guess what I'm wondering is, is there a case out there that you know of where a party said, well, the other side's breaching this contract, and we want you to fill in. We want you, Judge, to fill in this indefinite term, and then that will give us the ability to go back and hammer out the negotiations. Is there a case like that? Yes, Your Honor. The case is from the Wisconsin Supreme Court, which of course controls here, and it's Fontaine. In Fontaine, there was a piece of property. There was an option to purchase that piece of property. The option was at a stated amount, but the court said there were improvements, and when there are improvements, you have to pay for the improvements. The court made it clear that the person exercising the option would not have to, the person demanding the option would not have to exercise the option without knowing the price first. But let me get to Your Honor's point about definiteness, because definiteness is. Well, you are well, well, well into your rebuttal time. I'll restore it, but not if you keep going. Now you're going to chew it away. Okay, Your Honor. Well, I'll just finish the sentence on definiteness and then sit down. First of all, Motorola waived the argument on definiteness by not raising it as an alternative grounds for summary judgment and arguing quite the opposite, that that would be a question of fact. But secondly, even on the merits, Motorola's argument is wrong. Definiteness is a question that one asks at the inception of the contract. At the inception of the contract. That has too many semicolons in it. Sit yourself down. Let's hear from yourself. Go ahead. May it please the Court. Kathleen Sullivan for Motorola. Judge Chen, this Court does not have jurisdiction under Chamberlain. Patent misuse is the only hook to this Court's appellate jurisdiction. This case, as Apple framed it in an attempt to end run the proper resolution of the royalty issues here in patent infringement litigation, styled this as a pure contract and antitrust claim. And patent misuse was the only aspect of their claims that could possibly be a kind of reverse patent infringement action. And the Court dismissed it with prejudice. And they're appealing it now to us. We are. And if you were to agree with us that it should have been dismissed with prejudice, then maybe Chamberlain wouldn't apply. Why should it have been dismissed with prejudice? What if we reverse Judge Posner on the 898 patent and reinstate those infringement claims? If it's without prejudice, then 898, the patent misuse defense, could be pursued in the remanded case. No, no, no. Not if it was dismissed with prejudice. Correct. Exactly. So then why would we agree with you to dismiss it with prejudice, that she erred in not dismissing it with prejudice? Your Honor, that's the only issue on our cross-appeal. The main goal we have here is for you to affirm the dismissal without prejudice. But let me just say why we ask for with prejudice. I recognize it's a rare case where you ask for a district court's discretion to be overcome, where there's a dismissal without prejudice. The reason here is that, as Judge Crabb properly found, Apple tried to use her court, the majesty of the Federal District Court, as a kind of jams session, as a kind of adjunct to private negotiations, to provide what she called a bargaining chip or a vehicle for leverage in negotiations. And where Apple had the chance to put its arguments for a frand rate in, and then, as Your Honor said, tried to have their cake and eat it too, say at the last minute on the eve of trial. That doesn't have anything to do with it. You're supposed to be talking right now about DJ and jurisdiction, and none of this has anything to do with that. If the reason I – there's no jurisdiction. Let me go back to jurisdiction. There's no appellate jurisdiction here because, under the current posture of the case, unless you were to agree with us on our cross-appeal, under the current posture of the case, patent misuse, which is the only hooked patent jurisdiction in this court's appellate jurisdiction, was dismissed without prejudice, putting Apple back, as Your Honor said, Judge Moore, back in the same position as if the claim had never been brought. So if you don't agree with our cross-appeal, there should be a transfer. Yeah, but those cases like Nilsen and Chamberlain, they talk about whether there may have been an alteration of the party's legal rights. That's right. And maybe that's the consideration. It's not just a straight-up dismiss without prejudice, then. Fair enough, Your Honor. There's no jurisdiction. If you affirm there has been no change in Apple's legal rights, and therefore – because, as Your Honor says, if you affirm the dismissal without prejudice, the patent misuse claim can be pleaded as it should have been pleaded in the first place. But they don't have a right to refile it immediately, right? That was the hook in Nilsen where the patent claim was split off and dismissed from all the non-patent claims, but the district court said you can refile that patent claim in a new action. That's right, Your Honor. But here, because of the peculiar split between the contract and antitrust claims that stayed with Judge Crabb and the patent claims that went with Judge Posner, should there be a remand, there's an opportunity for them to pursue any patent misuse defense they want if you agree with Judge Crabb that the dismissal should have been without prejudice. That's true, but the dismissal, you know, it stops Apple from refiling the next day. In some ways, it's kind of like a dismissal with prejudice, at least for a period of time, isn't it? Your Honor, if the remand occurs to the Northern District of Illinois, and of course that's pending, then there will be an opportunity to bring the defenses. Those defenses were originally in the case. So we think the key... No, patent misuse was never asserted in the Posner litigation. I read every pleading from start to finish. Correct, Your Honor. Originally in the ITC case. Just an overarching theme... Which, by the way, also confuses me how patent misuse was raised with regard to the 898 in the ITC case since the 898 was not the subject of the complaint in the ITC case. I don't understand what any of you people are doing. So, Your Honor... in 15 different courts and bringing completely unrelated counterclaims in these various actions because I don't even think you can keep track of what patents at issue and which suit. Fair enough, Your Honor. And let me say why it's so important. Exactly for that reason. That is why it is so important that you affirm Judge Crabb's dismissal here. Let's put to one side... Let's just discuss her dismissal with prejudice. And let's recall that, as Your Honor said, there is, first of all, no antitrust injury here. Remember, there's three claims that were dismissed either on summary judgment or on the eve of trial. The antitrust claims are dismissed on summary judgment because the only antitrust injury Apple initially asserted was litigation conduct damages. Their damages expert, Mr. Knapper, was prepared to say how much money Apple spent in litigating to defend itself against Motorola's claims in the ITC and claims in the district court or to pursue its own affirmative claims against Motorola. That is obviously protected by NOR. And I didn't even hear my friend, Mr. Rosencrantz, argue differently. NOR Pennington protects, clearly under this Court's precedent in the ERBE case as under Supreme Court precedent, our right to go to court. Does it protect fraudulent conduct in front of an SSO? Your Honor, of course not. The answer is no, right. Of course not. But that's not their antitrust injury. Mr. Rosencrantz is trying now to resurrect that. Obviously that's time-barred, Your Honor. The Sherman Act has a four-year statute of limitations and the alleged deceit of the SSOs occurred in the late 1990s and early 2000s. So that's obviously time-barred. And Apple can't take time-barred conduct before a private body and try to connect it to NOR protection. Even if they didn't discover it until a couple of years ago? That's not, Your Honor, that's not the case. Apple was well aware of, it's undisputed in the record, that Apple was aware of Motorola's essential patent claims before they started issuing the iPhone. So there's no discovery issue here. I guess the idea of withholding the disclosure of the pending patent applications while the standard was being created. Well, Your Honor, first of all, we think what Motorola did was perfectly in conformity with industry practice, and we cite to an independent study on page 51 of Motorola's red brief. What should happen? Tell me, in the real world, would it have made a difference if Apple had agreed to be bound and accept whatever frand rate we come up with? Would that have been the dispositive turning point in this case? Your Honor, on the contract issue, Judge Crabb was absolutely right to reject any justiciable claim once they refused to be bound. If they had agreed to be bound, we believe there still would have been problems with the contract claim. So that gets rid of the justiciability problem. We believe there still would have been indefiniteness problems with a specific performance remedy for exactly the reasons Judge Chen alluded to earlier, that the term fair, reasonable, and nondiscriminatory rate, like the terms timely and reasonable efforts in the SSO disclosure clauses, those are terms that are subject to a great deal of ambiguity, as this court noted in Fidean v. Rambis as to the disclosure terms. But to go back to frand, Your Honor, we think what should happen is this. First of all, what the contracts with the standard-setting organizations envision is bilateral negotiations. If that breaks down, then there can be a discussion of frand in an infringement suit as an element of damages. Apple could have just come in in the infringement suits that Motorola filed and said, Hello, damages you're asking for are too high. Frand restricts your damages to the following amount. They in fact did, right? In the Posner suit, doesn't their pleading contain a bunch of frand background stuff? They didn't go so far as to make the antitrust and patent misuse claims, but I remember whole sections of their pleading, several paragraphs talking about frand. Absolutely, Your Honor. Do you think that's the right proceeding, not a separate proceeding? Absolutely, Your Honor. What Apple is trying to do here is to create a form of satellite litigation under Wisconsin or Washington or other state contract law that is an end run around the appropriate policy setting this court should superintend in orderly proceedings from patent infringement actions. What should happen is if you have a frand defense pleaded as your damages case, pleaded as an affirmative defense in the patent infringement case of unclean hands, waiver, equitable estoppel, license defense, Apple should have pleaded its frand concerns in Motorola's patent suits, not created this satellite litigation. Aren't we talking about at least some different patents than patents that were in the Posner litigation? Yes, Your Honor. So there isn't a need or something necessarily compelling Apple to go ahead and lump in all these other Motorola patents that it would like reasonable rates on in addition to everything that's actually being litigated in the Posner case, right? That's correct, Your Honor. What Apple is trying to do here is to say that an entire portfolio is subject to their version of frand. And, Your Honor, just to describe what, you asked me before and I want to be sure I've answered it. Is it the end of the case if Apple just says, yes, we'll take the license? Now, obviously you'll see other cases coming up from the district courts because this satellite litigation has been taking place in other district courts. And we would say at a minimum, when the party like Apple says they won't be bound, they just want to use the federal court for an advisory opinion about what a frand rate is, then Judge Pratt was absolutely right to dismiss the case. No question, no justiciable controversy, and no ability for specific performance remedy to make any difference in the litigation. I'm going to ask what's probably a dumb question. If in the Posner case he were to set the frand rate conceivably in the context of what damages ought to be in the form of a reasonable royalty, does that then bind the standard setter in terms of all future licenses to offer that rate to everybody else? That's an excellent question, Your Honor, because of course in the patent infringement case it will be patent specific, whereas what the claim Apple is making here is portfolio wide. We think the proper way to handle that is the way the standard setting organizations themselves envision, and the language of the ETSI and IEEE contracts are clear, bilateral negotiations between the parties. If it breaks down, binding arbitration. If you have portfolio wide licensing, that's a very complex enterprise. And Your Honor, in answer to Judge Chen's question, is there any case where you can just come along and take the rate and pop it into the contract, Mr. Rosencrantz cites to a non-patent case from the Wisconsin Supreme Court, Judge Pratt was very clear in her decision on why the court can't just come along and find a frand rate in a vacuum, and that's because the rate is sensitive in real world negotiations to a host of other issues that licensing experts and licensing negotiators are familiar with. What the rate is will depend on geographic scope, give backs and cross licensing, on duration, on a whole host of things. What I understand you to be saying is there isn't a single reasonable frand rate. That's exactly right, Your Honor. But reasonable represents a range, and any given person with whom you're negotiating may have factors that justify a higher rate or a lower rate and that they would all still be reasonable. That's exactly right, Your Honor. Precisely so. Which is why it's so artificial to say that Wisconsin law about the rent on an apartment or the price of a farm could possibly be analogous here. A reasonable rate and range negotiated in the real world can be different for different implementers depending on the cross licenses and all the other factors. And by the way, when Mr. Rosencrantz tries to say that Motorola was so out of bounds, I would refer you to the public list of rates that's on the appendix, in the appendix at 2194, which says that the opening offer here, and it was just an opening offer, was one to which Apple never responded. Apple never made any financial counteroffers in this case. Judge Crabb found that they never accepted any Motorola offers, and that's at A71. So just to go back to the initial point, there was no antitrust injury because, as Judge Crabb correctly found, Apple never put anything in about these supposed harms from deceit to the standard-setting organizations long ago, and there was no discovery issue. In fact, Judge Crabb said that there was plenty of opportunity to say, well, what is the market power that Motorola is now using to try to exact a super-fran rate? And the answer is none, because until a court in a patent infringement case says they have to pay that license, there is no coercive power. Motorola's coercive power depends upon patent judgments. So just to go back, I want to be sure I've answered. The fact that Apple said they wouldn't take the license, that means dismissal of the contract claims and their related declaratory judgment. And they were all dismissed without prejudice, so that can be brought somewhere else. That's exactly right, Your Honor. And if you affirm, that's the end of the case here, but not the end of the argument. But not the antitrust. Antitrust is with prejudice, Your Honor, because that was a merits resolution. And we think that their failure, just as you were saying in the prior case, we move for summary judgment on Norr Pennington. Then was the time for Apple to come in and say if it had evidence of damage from this other prior deceit, supposed alleged deceit to the standard-setting organizations. They came back with none. And I refer you, Your Honor, in the record to the testimony of Dr. Carlton. They try to get some antitrust injury out of him. But if you look at the record, all he says is something conclusory about possible injury from market power. Well, he says today the antitrust injury is the threat of acceding to a higher than reasonable rate. But, Your Honor, that can't happen until a court orders it, if Motorola prevails in patent infringement litigation. And even if it could, there was no evidence of antitrust injury. You can't just plead a conclusory threat without injury. And they failed to come forward at summary judgment with any concrete evidence. As Judge Crabb puts it on pages 182 to 183, they failed to come forward. I'm sorry, 82 to 83. They failed to come forward with any evidence that there was a change in a product, a delay in the release of the iPhone, an increased cost, or a loss of any customer or market share. Summary judgment was the time to put that antitrust injury in. They didn't. They can't causally link it back to the deceit, which we deny anyway. And therefore, they can't take time-barred 1990s claims, put them together with NOR-protected 2007 and 2010 claims, and create an antitrust case. Antitrust is gone. We respectfully submit that the contract case should also be gone, both because it was non-justiciable and because even if they had accepted the license, the terms of Frand are too indefinite for a court to simply fill them in. Please look at Judge Crabb's discussion of how she's not a licensing expert. She can't fill in all these terms about cross-licensing. And therefore, even if they had turned about and said they would accept a license, there still wouldn't have been a basis for a contract remedy of specific performance. And so the claims were properly dismissed. And we respectfully submit that you should affirm if you maintain jurisdiction. Thank you, Ms. Sullivan. Thank you, Your Honor. Mr. Rosenkranz, you have five. Let's do five minutes of rebuttal time. Thank you, Your Honor. Let me start with where Judge Moore started. Yes, there's a lot of litigation here. The reason there is so much litigation is that we don't have a license. And our explanation for why we don't have a license and there is an enormous amount of evidence on the record to support it is because Motorola made outrageous demands that Judge Robart found to be 125 times in that case what a reasonable royalty would be. No one else, we have a theory here that will put Motorola to the position where it has to make an offer that is reasonable. That theory could end all of this litigation. It is a game changer. Only this court has the power to step in and say, yes, courts can decide what a reasonable royalty is, which goes back to Judge Chen's question. Motorola admits that it has made a binding commitment when it declared it would offer for and rates. That commitment is to make reasonable offers. The SSOs believe that that commitment is judicially enforceable because judges all the time set royalties and fact finders all the time determine whether there is discrimination and what is a reasonable rate. The term reasonable has to have some content to it. And the SSOs believe that the only ones with the power and the bankroll to be able to hold the promisors to their obligations are parties like Apple. So then why don't you just bring these claims or desires for getting a fran rate from the courts and just embed it right in the infringement litigation? Because you can't. Your Honor, Judge Posner, for example, does not have before him a single claim that allows him to set a fran rate for the entire portfolio. He has six SEPs. The ITC has two SEPs. No one's even asking either of those jurisdictions to set the fran rate for everyone. There is no case out there that would set a fran rate for the entire portfolio. And once that is set, the whole structure of settlement would be changed. But it just feels to me like you're asking us to issue advisory verdicts whenever somebody wants to know exactly what the fran rate would be without being obligated to even accept it. No, Your Honor. We're not asking for advisory verdicts. There is a contractual commitment on Motorola's part to make a reasonable offer. If Motorola's offer is 12 times the reasonable rate, someone has to hold them to it. A court could say, at a minimum in this case, we had a claim that that rate was unreasonable. Well, this is your breach of contract claim. But she dismissed it without prejudice. So nobody said, you don't have the right to bring this claim. She just said, I'm not going to reach it here because of the companion infringement suits. On misuse, Your Honor. Not on the contract claim. Your Honor, let me put it this way. Imagine that you've had an eye on a house at Georgetown and Motorola owns the house. And you bought yourself the right to get the offer from Motorola. And Motorola says, I'll make you an offer. It's somewhere between $1 million and $12 million. And we're going to let a fact finder decide the difference. You would say, no. You've got to give me a reasonable price. And you could go to court because the price has to be a market price. That's exactly the position that Motorola is in. Only the courts have the power to determine what the frand rate is. Not in the context of a specific patent suit. It won't happen there. In the context of a global litigation that sets Motorola's obligations. So let me get this straight. You want a court, a judge, to set a global royalty rate for an entire patent portfolio to get the negotiations really going? Well, no, Your Honor. The negotiations have stalled. The negotiations are going nowhere. We want a court to say, as Judge Robart did in a case that is now before this court, to say, here's the value based upon all sorts of benchmarks that are perfectly, I wouldn't say easy, but within the can of a court to figure out. Here are expert reports. But yes, to say, here is the frand rate for global rights, which is what the contract promises, on the permanent life of the patents, which is what the contract promises, subject to the condition that Apple will make a reciprocal frand offer on its obligations. So you want us to set the ceiling? No, no, Your Honor. Not a ceiling. What we want you to do is to set a baseline. And it says, here's the baseline for a global contract that has these basic terms. Now, if Motorola wants to bargain off of that baseline, it can. If Apple wants to bargain off of that baseline with additional bells and whistles, they can. But we're asking for a baseline to be set. If the baseline is $1,235, then Apple will be in a horrible position at the negotiating table. We're not asking for a bargaining chip for us. We're asking for the court to step in and set a rate, or at a minimum, a range of reasonable rates, as Judge Robart did, that will almost certainly resolve this whole global litigation. Thank you, Your Honor. Thank you. Thank both counsel. The argument is taken under submission. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning at 10 AM.